UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ORLANDO BERNARD EASTER,

    Defendant.
_____/

Case No. 1:24-cr-59

Hon. Hala Y. Jarbou

## **OPINION**

After a three-month investigation, Defendant Orlando B. Easter was arrested and charged with possession with intent to distribute controlled substances and felon in possession of firearms. (Indictment, ECF No. 1.)  Over the course of the investigation, law enforcement officers surveilled Easter's personal vehicles, a storage unit, and a residential address, relying upon information obtained from a confidential informant to secure search warrants.  Easter has filed four motions to suppress, claiming the search warrants to track his Chevrolet Impala (ECF No. 44), record video outside Unit H17 at a local A Plus storage facility (ECF No. 45), subsequently search Unit H17 on the A Plus facility (ECF No. 46), and search a residence at 2504 Crozier Avenue in Muskegon, Michigan (ECF No. 47) were improper due to lack of probable cause, violating his Fourth Amendment rights.  He asks the Court to prohibit any and all evidence from these searches at trial. Easter also requests a hearing under *Franks v. Delaware*, 438, U.S. 154 (1978), to challenge the validity of the warrants.  For the reasons stated herein, the Court will deny Easter's motions to suppress and his request for a hearing.

## I. BACKGROUND

A joint investigation between the Drug Enforcement Administration ("DEA") and the West Michigan Enforcement Team ("WEMET") targeted Easter for suspected drug trafficking. As part of their surveillance efforts, agents coordinated with a confidential informant ("CI") to recognize patterns in Easter's activity and conduct controlled purchases of narcotics. (Fry Aff. for Impala Warrant ¶¶ f-k, ECF 48-2.) With the help of the CI, law enforcement officers secured numerous search warrants to intensify surveillance over Easter. Through an affidavit outlining Easter's use of a Chevrolet Impala during a controlled purchase with the CI, officers obtained a warrant to install a tracking device on this vehicle. (*Id.*) Using a separate affidavit detailing Easter's use of an A Plus storage unit for controlled purchases with the CI, and information tying Easter to Unit 17 at the A Plus facility, they also obtained a warrant to set up a camera to record the activity around Unit H17. (Fry Aff. for H17 Video Warrant ¶¶ f, n-t, ECF No. 48-4.) With additional surveillance from the tracking device and video footage, officers collected evidence showing Easter would leave from the residence on Crozier Avenue, stop at the A Plus storage unit, and then meet up with the CI for a controlled purchase of narcotics. (Fry Aff. for H17 Search Warrant ¶¶ v-cc, ECF No. 48-5.) Law enforcement officers used this additional surveillance to obtain search warrants for Easter's storage unit and a residence on Crozier Avenue. (*Id.*; Fry Aff. for Crozier Search Warrant ¶¶ n-cc, ECF No. 48-6.)

Easter claims law enforcement officers did not have probable cause to obtain these search warrants and never proved the reliability of the confidential informant. He seeks suppression of all information and evidence obtained via these warrants. He also requests a *Franks* hearing to challenge the validity of the warrants.

## II. STANDARD

### A. Evaluating Warrants

"The Fourth Amendment protects the public from 'unreasonable searches and seizures.'" *United States v. McMullen*, 103 F.4th 1225, 1229 (6th Cir. 2024) (quoting U.S. Const. amend. IV). "Generally speaking, government officers must secure a warrant through the judicial process before conducting a search or seizure." *Id.* (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)). "The Fourth Amendment requires that warrants be supported by probable cause." *United States v. Burrell*, 114 F.4th 537, 550 (6th Cir. 2024) (citing *United States v. Crawford*, 943 F.3d 297, 305 (6th Cir. 2019)). "Probable cause exists when an affidavit shows a 'fair probability' that the police will find evidence in the place they seek to search." *Id.* (quoting *United States v. Ruffin*, 979 F.3d 528, 531 (6th Cir. 2020)). The Court reviews the "four-corners of the affidavit" to determine whether there was probable cause. *Id.*

### B. *Franks* Hearing

Affidavits supporting warrants are entitled to a presumption of validity. *Franks*, 438 U.S. at 171. The Fourth Amendment requires a hearing to evaluate the validity of a warrant if "the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155-56. "A defendant challenging the validity of a search warrant's affidavit bears a heavy burden." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). "Allegations of [mere] negligence or innocent mistake are insufficient." *Id.* To overcome the presumption of validity afforded to these affidavits, the defendant must make "allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof." *Franks*, 438 U.S. at 171-72. "If, when material that is the subject of the alleged falsity or reckless disregard is set to one

3

side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Bateman*, 945 F.3d at 1008 (quoting *Franks*, 438 U.S. at 171-72). "Whether to hold an evidentiary hearing based upon a challenge to the validity of a search warrant's affidavit, given alleged misstatements and omissions, is committed to the sound discretion of the district court." *United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017) (citing *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001)).

### III. ANALYSIS

Easter filed four motions to suppress, raising concerns with the affidavits that provided support for the warrants that allowed law enforcement officers to track his Chevrolet Impala, conduct video surveillance of a storage unit, subsequently search the storage unit, and search a residence on Crozier Avenue. He claims the affidavits relied on material omissions, failed to establish a nexus between criminal activity and the identified locations, and that the affidavits improperly relied upon a confidential informant. The Court disagrees with Easter's characterizations of the affidavits. The affidavits were comprehensive, sufficiently particular, and demonstrated the reliability of the CI.

**A. Warrant to Track Easter's Chevrolet Impala**

Law enforcement officers secured a warrant to attach a Global Positioning System ("GPS") device to Easter's Chevrolet Impala. To support the warrant, Detective William Fry—a member of the WEMET—submitted an affidavit. (Fry Aff. for Impala Warrant ¶ a.) The affidavit relied on information obtained from a CI to establish that Easter would use a gold Chevrolet Impala with a Michigan license plate of 5PBN08 for criminal activity. Easter challenges the reliability and sufficiency of the affidavit.

Easter first complains that Fry's affidavit contained material omissions. He asserts that the affidavit alleged Easter had only one vehicle, the Chevrolet Impala, when Easter actually owned

4

and used three vehicles.  But the affidavit made no such allegation.  The affidavit focused on Easter's Chevrolet Impala as the particular place where incriminating evidence may be found, as is required to establish a nexus between the search and criminal activity.  *See United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)) ("To justify a search, the circumstances must indicate why evidence of an illegal activity will be found in a 'particular place.'").  As the affidavit describes, the CI orchestrated a controlled purchase of narcotics with Easter.  (Fry Aff. for Impala Warrant ¶¶ f-k.)  Law enforcement officers, assisting in the surveillance of the controlled purchase, witnessed Easter use a gold Chevrolet Impala with a Michigan license plate of 5PBN08 during the controlled purchase.  (*Id.*)  In multiple controlled buys with the CI, Easter used the same Chevrolet Impala.  (*Id.* ¶ m.)  The same Chevrolet Impala was located at an address on Crozier Avenue—which is associated with Easter—on several occasions.  (*Id.* ¶¶ n-o.)  The Impala was registered to Easter.  (*Id.* ¶ l.)  The affidavit sought a warrant to track the Impala because law enforcement officers could tie the Impala to Easter and the suspected criminal activity.  There was no need to mention Easter's other vehicles in this affidavit.  Contrary to Easter's assertion, the affidavit did not claim that this was Easter's only vehicle, only that law enforcement officers documented Easter using this vehicle for illicit purposes.  Failing to mention Easter's access to other vehicles reflects an omission of irrelevant information, not of any material fact.

   Easter claims the affidavit misled the magistrate judge to secure the warrant on this particular vehicle.  But, it is unclear why Easter's access to additional vehicles would influence the magistrate judge in their evaluation of this warrant. Law enforcement officers witnessed Easter use the Impala.  So they sought a warrant to track the Impala.  Easter's access to other vehicles does not diminish the Impala's involvement in Easter's suspected operation, nor does it raise any

5

doubt as to the likelihood that surveilling the Impala would uncover additional evidence of Easter's suspected criminal activity.

Easter's second complaint related to the warrant to track the Impala targets the CI's credibility. Easter cites *United States v. Helton*, 314 F.3d 812 (6th Cir. 2003), arguing that when an affidavit's allegations are not corroborated, suppression is proper. However, in *Helton*, the information came from an anonymous tipster "two and three degrees removed from the affiant." *Id.* at 822. Here, the CI worked directly with the affiant. (Fry Aff. for Impala Warrant ¶ d-i.)

Further, Courts distinguish between information from an anonymous source and a confidential informant. "Anonymous tips . . . demand more stringent scrutiny of their veracity, reliability, and basis of knowledge than reports from confidential informants." *Burrell*, 114 F.4th at 550 (quoting *Helton*, 314 F.3d at 820). "It is not necessary that the evidence establishing probable cause reflect the direct personal observations of a law enforcement official." *United States v. Miller*, 314 F.3d 265, 268 (6th Cir. 2002). "In fact, the evidence may be based upon a confidential informant's tip, so long as the issuing judge is reasonably assured that the confidential informant was credible and the information was reliable." *Id.* When the affidavit relies on "confidential sources . . . courts must consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances." *United States v. Dyer*, 580 F.3d 386, 390 (6th Cir. 2009) (quoting *Helton*, 314 F.3d at 819). "[I]nformation about the confidential informant's previous tips, the length or nature of the relationship between the informant and [law enforcement], and any indication that the magistrate judge learned of the informant's identity" would bolster the informant's reliability. *Id.* at 391.

The affidavit established the CI's reliability. The affidavit discussed the 13 times Fry previously relied on the CI's tips, leading to successful controlled purchases. (Fry Aff. for Impala

6

Warrant ¶ d.)  Fry also detailed past cooperation with this CI in which the CI's tips led to "the successful location and arrest of . . . fugitives." (*Id.* ¶ e.)  And while he need not corroborate or verify the CI's information, Fry outlined how he confirmed the CI's information was accurate, from the location of the controlled purchase to the substance Easter sold. (*Id.* ¶¶ f-m.)  The affidavit provided sufficient information about the affiant's relationship with, and the reliability of, the CI.

The affidavit created a nexus between Easter and this specific vehicle.  It established the CI's credibility.  There were no material omissions, and to the extent that any omissions amount to a misrepresentation (which none do), the remaining content—with or without the omitted material—is sufficient to establish probable cause.  The affidavit detailed how and why incriminating evidence is likely to be found in the particular place (the Impala) and how the warrant would further the investigation.  It properly supported the warrant to track Easter's Chevrolet Impala, and Easter does not meet the heavy burden to render a *Franks* hearing necessary.

### B. Warrant for Video Surveillance of Storage Unit

Law enforcement officers secured a warrant to set up a covert electronic surveillance device to record video footage of a storage unit tied to Easter.[1]  Relying on the CI, Fry submitted an affidavit to establish probable cause.  Easter challenges this affidavit as well.

Easter claims the affidavit did not establish the requisite nexus between this specific storage unit and the suspected criminal activity.  He is mistaken.  "To justify a search, the circumstances

---

[1] The Government raises a threshold issue regarding Easter's expectation of privacy. *See United States v. May-Shaw*, 955 F.3d 563, 567 (6th Cir. 2020) (citing *Katz*, 389 U.S. at 360-61) (explaining that a defendant must show a subjective and objective expectation of privacy to claim Fourth Amendment protections).  The Government claims that the video surveillance only captured footage of the exterior of the storage unit and a shared driveway area at the A Plus facility, where Easter would not have an expectation of privacy.  However, the Government notes this footage shows the apparent contents of the storage unit and the areas within the unit Easter accessed. (Fry Aff. for H17 Search Warrant ¶¶ w-x.)  Easter may have an expectation of privacy in this storage area.  However, the Court need not address this issue, as the Government obtained a warrant and, as discussed below, Fry's affidavit established the requisite probable cause.

7

must indicate why evidence of an illegal activity will be found in a 'particular place.'" *Bass*, 785 F.3d at 1049 (citing *Gates*, 462 U.S. at 238).  The affidavit needs to state why evidence of the crime may be at the particular place, and how the affiant came to know such evidence would be there.  *Ellison v. Balinski*, 625 F.3d 953, 958-59 (6th Cir. 2010).  Surveillance that reveals frequent trips to or from a location—when such trips are connected to drug trafficking activity—sufficiently establishes a nexus to search that particular place.  *Burrell*, 114 F.4th at 552.

Contrary to Easter's contention, Fry's affidavit established the nexus between the particular storage unit and Easter's alleged drug trafficking operation.  In the affidavit, Fry discussed law enforcement officers' surveillance of Easter during controlled purchases with the CI.  (Fry Aff. for H17 Video Warrant ¶¶ f, x.)  During the controlled purchases, Easter would stop at A Plus storage on his way to the transactions.  (*Id.*)  Additionally, using information collected from the GPS device affixed to one of Easter's vehicles, law enforcement officers observed Easter routinely access the A Plus storage facility.  (*Id.* ¶ cc.)  Officers saw vehicles registered to Easter parked outside of Unit 17 at the A Plus storage facility.  (*Id.* ¶¶ r-t.)  Officers obtained records indicating Easter leased and accessed Unit 17 at the A Plus storage facility.  (*Id.* ¶¶ n-q.)  The affidavit tied Easter to, specifically, Unit 17 at the A Plus storage facility and documented the connection to his alleged drug trafficking, establishing the requisite nexus for probable cause.  And, much like the affidavit supporting the warrant to track the Impala, the affidavit detailed the reliability of the CI. Fry detailed his continued, successful cooperation with the CI through controlled purchases, bolstered by evidence of previous successful investigations as well.  (*Id.* ¶¶ d-j, t-z.)  The affidavit was complete and sufficient to support probable cause.  It detailed how and why law enforcement officers obtained the information and showed why it is likely incriminating evidence was located at the particular place.  Easter's motion to suppress and request for a *Franks* hearing will be denied.

**C. Warrant for Search of Storage Unit**

Law enforcement officers obtained a warrant to search the contents of Unit 17 at the A Plus storage facility for illegal drugs, money, records of transaction related to drug trafficking, weapons, and related paraphernalia. In support of the warrant, Fry submitted an affidavit. Easter challenges the validity of the warrant claiming that the affidavit relied on information collected from improper searches.

Fry's affidavit in support of the warrant to search Unit 17 included evidence collected from the surveillance of Easter's Impala and the exterior of the storage unit. (Fry Aff. for H17 Search Warrant ¶¶ t-y.) Easter claims that, because the surveillance of his Impala and the exterior of the storage unit was improper, and the affidavit to search Unit 17 relied on the improper surveillance, the Court should suppress evidence from the search of Unit 17 as it constitutes fruit from poisonous trees.

"Courts are required to suppress evidence that is directly or indirectly 'the tainted "fruit" of . . . unlawful governmental conduct.'" *United States v. Waide*, 60 F.4th 327, 338 (6th Cir. 2023) (quoting *Nix v. Williams*, 467 U.S. 431, 441 (1984)). But when the government acts lawfully, there is no poisonous tree. Here, as discussed, the government properly established probable cause to surveille Easter's Impala and record video from outside Unit 17 at the A Plus storage facility. The subsequent search warrants could rely on information obtained in those investigation efforts. While Easter may not like the trees, or the fruit they bear, this does not make them poisonous.

The affidavit included law enforcement officers' surveillance efforts which tie Easter— and his alleged drug trafficking activity—directly to Unit 17. Officers witnessed Easter enter the unit and engage in activity that indicated drug trafficking. (Fry Aff. for H17 Search Warrant ¶¶ w-dd (witnessing Easter possess suspected narcotics and access the storage unit on the way to a controlled purchase).) The affidavit also addressed the reliability of the CI that engaged in the

9

controlled purchases.  (*Id.* ¶¶ d-e.)  The affidavit established a nexus between Easter's suspected criminal activity and the particular place subject to the warrant.  It detailed how and why law enforcement officers obtained the information and showed why it is likely incriminating evidence was located at the particular place.  The affidavit did not rely on any poisonous fruit, and it established both a nexus between Easter and Unit 17 and the reliability of the CI.  There are no misrepresentations or material omissions; thus, a *Franks* hearing is not warranted.  The affidavit, and the subsequent search warrant, comply with the requirements of the Fourth Amendment.  Easter's motion to suppress and his request for a *Franks* hearing will be denied.

### D. Warrant for Search of Crozier Avenue Residence

Law enforcement officers obtained a warrant to search 2504 Crozier Avenue in Muskegon, Michigan, for illegal drugs, money, records of transactions related to drug trafficking, weapons, related paraphernalia, and clothing tied to Easter.  In support of the warrant, Fry submitted an affidavit.  Easter challenges this affidavit, and the subsequent warrant, arguing that law enforcement officers relied on improper surveillance (tracking his Impala and video recording the exterior of Unit 17).  He, once again, claims these searches constitute fruit from poisonous trees.  The Court reiterates that the searches were proper.  The fruit used to establish probable cause for this warrant came from a perfectly healthy tree.

Easter also claims that, because there were no controlled buys at the Crozier Avenue address, law enforcement officers did not establish a proper nexus to search this particular place.  Case law suggests otherwise.

A location can be subjected to surveillance if it serves as the starting point for a drug deal— where the defendant leaves from—even if the actual transaction does not occur at that location.  *Burrell*, 114 F.4th at 552.  If surveillance indicates that a location is likely to have evidence, a

warrant is justified.  *Id.*  When personal information ties an individual to a specific location, it bolsters the nexus to the particular place.  *Id.*

As stated in the affidavit, law enforcement officers observed Easter leave from this Crozier Avenue address to go to the controlled purchases with the CI.  (Fry Aff. for Crozier Search Warrant ¶ g.)  On multiple occasions, officers saw vehicles registered to and/or tied to Easter parked at this address.  (*Id.* ¶¶ g, m, r-s, w-z.)  According to the Muskegon County Report Writing System, Trekiesha Jackson, a woman with whom Easter was in a dating relationship and has a child, is registered to this Crozier Avenue address.  (*Id.* ¶ f.)  The affidavit established a nexus between Easter's criminal activity and this particular address on Crozier Avenue, even without any controlled buys at the residence itself.  It also showed how and why the affiant had reason to believe incriminating evidence was likely at this address.  The affidavit sufficiently established probable cause for the search warrant of the Crozier Avenue residence.

Easter requests a *Franks* hearing claiming that the affidavit made material omissions about the CI.  Easter claims that because the affidavit does not mention the quantity of drugs sold at the controlled purchases, the investigation was tainted.  He suggests the CI was taking or hiding drugs and cannot be trusted.  The affidavit need not discuss the amount of drugs sold in the controlled purchases to establish probable cause.  The substances Easter allegedly sold in the controlled purchases tested positive for fentanyl.  (*Id.* ¶¶ k, z.)  The CI and the CI's vehicle were monitored and searched before, during, and after the controlled purchases, uncovered no additional narcotics or contraband.  (*Id.* ¶¶ h, w.)  The affidavit established the CI's reliability.  (*Id.* ¶¶ d-f.)  Even if the affidavit did contain material omissions, it established probable cause with the remaining information.  A *Franks* hearing is unwarranted.

The affidavit established a nexus between Easter and the Crozier Avenue address. It discussed how and why the affiant had probable cause that incriminating evidence was located at the particular place, and it established the CI's reliability. Easter's motion to suppress and his request for a *Franks* hearing will be denied.

## IV. CONCLUSION

The affidavits in support of the challenged search warrants sufficiently established probable cause. The affidavits tied Easter's suspected criminal activity to particular places, produced evidence supporting the CI's reliability, and did not rely on any fruit from poisonous trees. The law enforcement officers' search warrants were proper and did not violate Easter's Fourth Amendment rights. Thus, the Court will deny Easter's motions to suppress and his request for a *Franks* hearing.

The Court will enter an order consistent with this Opinion.

Dated: October 29, 2024            /s/ Hala Y. Jarbou
                                   HALA Y. JARBOU
                                   CHIEF UNITED STATES DISTRICT JUDGE